**BROWN KWON & LAM LLP**
Angela Kwon, Esq. (AK7296)
William Brown, Esq. (WB6828)
521 Fifth Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
akwon@bkllawyers.com
wbrown@bkllawyers.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **ROBERTO MALDONADO, ALEXANDER UNGER, SAUL MARTINEZ, and SERGIO ALDANA DIAZ,** *on behalf of themselves and others similarly situated*, | **No: 20-cv-10309** |
| **Plaintiffs,** | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **- against -** | |
| **NEW YORK BEER CO LLC**     **d/b/a JACOB'S PICKLES,** **THE PICKLE PEOPLE LLC**     **d/b/a MAISON PICKLE,** **PUNCH THE PICKLE LLC**     **d/b/a LUCKY PICKLE DUMPLING CO.,** **TIKI CHICKI LLC**     **d/b/a TIKI CHICK,** **IAKOVOS HADJIGEORGIS,** **and GEORGE HADJIGEORGIS,** | |
| **Defendants.** | |

---

     Plaintiffs Roberto Maldonado, Alexander Unger, Saul Martinez and Sergio Aldana Diaz ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants

1

New York Beer Co LLC d/b/a Jacob's Pickles, The Pickle People LLC d/b/a Maison Pickle, Punch

The Pickle LLC d/b/a Lucky Pickle Dumpling Co., Tiki Chicki LLC d/b/a Tiki Chick (collectively,

"Corporate Defendants"), Iakovos Hadjigeorgis and George Hadjigeorgis (collectively,

"Individual Defendants," and together with Corporate Defendants, "Defendants") and allege as

follows:

## INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and similarly situated workers

who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from

Defendants: (1) unpaid minimum wage due to invalid tip credit, (2) unpaid wages due to off-the-

clock work, (3) misappropriated tips, (4) unlawful wage deductions, (5) liquidated damages, and

(6) attorneys' fees and costs.

2.     Plaintiffs also bring this action on behalf of themselves and similarly situated

workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19,

§§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal

Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wage due

to invalid tip credit, (2) unpaid wages due to off-the-clock work, (3) misappropriated tips, (4)

unlawful wage deductions, (5) stautory penalties, (6) liquidated damages, and (7) attorneys' fees

and costs.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§

1331 and 1337.

4.      This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiffs*

#### *Roberto Maldonado*

7.      Plaintiff Roberto Maldonado is an adult who resides in New York County, New York.

8.      Plaintiff Roberto Maldonado was a covered employee within the meaning of the FLSA and NYLL.

9.      Plaintiff Roberto Maldonado retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

#### *Alexander Unger*

10.      Plaintiff Alexander Unger is an adult who resides in New York County, New York.

11.      Plaintiff Alexander Unger was a covered employee within the meaning of the FLSA and NYLL.

12.      Plaintiff Alexander Unger retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

### Saul Martinez

13.     Plaintiff Saul Martinez is an adult who resides in Queens County, New York.

14.     Plaintiff Saul Martinez was a covered employee within the meaning of the FLSA and NYLL.

15.     Plaintiff Saul Martinez retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

### Sergio Aldana Diaz

16.     Plaintiff Sergio Aldana Diaz is an adult who resides in Kings County, New York.

17.     Plaintiff Sergio Aldana Diaz was a covered employee within the meaning of the FLSA and NYLL.

18.     Plaintiff Sergio Aldana Diaz retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

### *Defendants*

19.     At all relevant times, Defendants owned and operated an enterprise under the name "Pickle Hospitality," comprised of four (4) restaurants in New York with names and addresses as follows:

     a.   "Jacob's Pickles" – 509 Amsterdam Avenue, New York, NY 10024;

     b.   "Maison Pickle" – 2315 Broadway, New York, NY 10024;

     c.   "Lucky Pickle Dumpling Co." – 513 Amsterdam Avenue, New York, NY 10024;

     d.   "Tiki Chick" – 517 Amsterdam Avenue, New York, NY 10024

       (collectively, the "Pickle Hospitality Restaurants").

20.     At all relevant times, all of the Pickle Hospitality Restaurants were located within two blocks of each other.

21.     At all relevant times, Defendants owned and operated the Pickle Hospitality Restaurants as a single integrated enterprise. Specifically, Defendants had a common business purpose, shared common ownership and management, engaged in interrelated operations, and have centralized control of labor relations.

22.     At all relevant times, employees, food, and supplies were interchangeable and regularly transferred among the Pickle Hospitality Restaurants.

23.     At all relevant times, the Pickle Hospitality Restaurants was operated under the same wage and hour policies established by Individual Defendants.

24.     At all relevant times, Defendants jointly employed Plaintiffs and similarly situated employees.

25.     At all relevant times, each Defendant had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

26.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

### New York Beer Co LLC d/b/a Jacob's Pickles

27.     Corporate Defendant New York Beer Co LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 509 Amsterdam Avenue, New York, NY 10024 and an address for service of process located at 294 Manhattan Avenue, New York, NY 10026.

28.     At all relevant times, Defendants operated Jacob's Pickles through Corporate Defendant New York Beer Co LLC.

29.     At all relevant times, Corporate Defendant New York Beer Co LLC had an annual dollar volume of sales in excess of $500,000.

30.     Corporate Defendant New York Beer Co LLC is a covered "employer" within the meaning of the FLSA and NYLL.

31.     Corporate Defendant New York Beer Co LLC employed Plaintiffs and similarly situated employees.

32.     At all relevant times, Corporate Defendant New York Beer Co LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

33.     At all relevant times, Corporate Defendant New York Beer Co LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Pickle Hospitality Restaurants.

### *The Pickle People LLC d/b/a Maison Pickle*

34.     Corporate Defendant The Pickle People LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 2315 Broadway, New York, NY 10024 and an address for service of process located at 2226 27th Street, Astoria, NY 11105.

35.     At all relevant times, Defendants operated Maison Pickle through Corporate Defendant The Pickle People LLC.

36.     At all relevant times, Corporate Defendant The Pickle People LLC had an annual dollar volume of sales in excess of $500,000.

37.     Corporate Defendant The Pickle People LLC is a covered "employer" within the meaning of the FLSA and NYLL.

38.     Corporate Defendant The Pickle People LLC employed Plaintiffs and similarly situated employees.

39.     At all relevant times, Corporate Defendant The Pickle People LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

40.     At all relevant times, Corporate Defendant The Pickle People LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Pickle Hospitality Restaurants.

### Punch The Pickle LLC d/b/a Lucky Pickle Dumpling Co.

41.     Corporate Defendant Punch The Pickle LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 513 Amsterdam Avenue, New York, NY 10024 and an address for service of process located at 2226 27th Street, Astoria, NY 11105.

42.     At all relevant times, Defendants operated Lucky Pickle Dumpling Co. through Corporate Defendant Punch The Pickle LLC.

43.     At all relevant times, Corporate Defendant Punch The Pickle LLC had an annual dollar volume of sales in excess of $500,000.

44.     Corporate Defendant Punch The Pickle LLC is a covered "employer" within the meaning of the FLSA and NYLL.

45.     Corporate Defendant Punch The Pickle LLC employed Plaintiffs and similarly situated employees.

46.     At all relevant times, Corporate Defendant Punch The Pickle LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

47.     At all relevant times, Corporate Defendant Punch The Pickle LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Pickle Hospitality Restaurants.

### Tiki Chicki LLC d/b/a Tiki Chick

48.     Corporate Defendant Tiki Chicki LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 517 Amsterdam Avenue, New York, NY 10024 and an address for service of process located at c/o Hadjigeorgis, 2098 Frederick Douglass Boulevard, New York, NY 10026.

49.     At all relevant times, Defendants operated Tiki Chick through Corporate Defendant Tiki Chicki LLC.

50.     At all relevant times, Corporate Defendant Tiki Chicki LLC had an annual dollar volume of sales in excess of $500,000.

51.     Corporate Defendant Tiki Chicki LLC is a covered "employer" within the meaning of the FLSA and NYLL.

52.     Corporate Defendant Tiki Chicki LLC employed Plaintiffs and similarly situated employees.

53.     At all relevant times, Corporate Defendant Tiki Chicki LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

54.    At all relevant times, Corporate Defendant Tiki Chicki LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Pickle Hospitality Restaurants.

### Iakovos Hadjigeorgis

55.    Individual Defendant Iakovos Hadjigeorgis is also known as Jacob Hadjigeorgis.

56.    At all relevant times, Individual Defendant Iakovos Hadjigeorgis was an owner and operator of the Pickle Hospitality Restaurants.

57.    At all relevant times, Individual Defendant Iakovos Hadjigeorgis was a principal of each of the Corporate Defendants.

58.    Individual Defendant Iakovos Hadjigeorgis is a covered "employer" within the meaning of the FLSA and NYLL.

59.    Individual Defendant Iakovos Hadjigeorgis employed Plaintiffs and similarly situated employees.

60.    At all relevant times, Individual Defendant Iakovos Hadjigeorgis was directly involved in managing the operations of the Pickle Hospitality Restaurants.

61.    At all relevant times, Individual Defendant Iakovos Hadjigeorgis had authority over personnel or payroll decisions and employment policies, practices, and procedures at the Pickle Hospitality Restaurants.

62.    At all relevant times, Individual Defendant Iakovos Hadjigeorgis had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and conditions of their employment at the Pickle Hospitality Restaurants, including their work assignments, work schedules, pay and responsibilities.

63.     At all relevant times, Individual Defendant Iakovos Hadjigeorgis had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at the Pickle Hospitality Restaurants.

64.     At all relevant times, Individual Defendant Iakovos Hadjigeorgis had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at the Pickle Hospitality Restaurants.

65.     At all relevant times, Individual Defendant Iakovos Hadjigeorgis had the power to maintain employment records, including time and/or wage records of employees at the Pickle Hospitality Restaurants.

### *George Hadjigeorgis*

66.     At all relevant times, Individual Defendant George Hadjigeorgis was an owner and operator of the Pickle Hospitality Restaurants.

67.     At all relevant times, Individual Defendant George Hadjigeorgis was a principal of each of the Corporate Defendants.

68.     Individual Defendant George Hadjigeorgis is a covered "employer" within the meaning of the FLSA and NYLL.

69.     Individual Defendant George Hadjigeorgis employed Plaintiffs and similarly situated employees.

70.     At all relevant times, Individual Defendant George Hadjigeorgis was directly involved in managing the operations of the Pickle Hospitality Restaurants.

71.     At all relevant times, Individual Defendant George Hadjigeorgis had authority over personnel or payroll decisions and employment policies, practices, and procedures at the Pickle Hospitality Restaurants.

72.     At all relevant times, Individual Defendant George Hadjigeorgis had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and conditions of their employment at the Pickle Hospitality Restaurants, including their work assignments, work schedules, pay and responsibilities.

73.     At all relevant times, Individual Defendant George Hadjigeorgis had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at the Pickle Hospitality Restaurants.

74.     At all relevant times, Individual Defendant George Hadjigeorgis had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at the Pickle Hospitality Restaurants.

75.     At all relevant times, Individual Defendant George Hadjigeorgis had the power to maintain employment records, including time and/or wage records of employees at the Pickle Hospitality Restaurants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former non-exempt tipped employees employed at the Pickle Hospitality Restaurants owned, operated, and/or controlled by Defendants, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

77.     At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiffs and FLSA Collective Members the full minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek. Specifically, Defendants claimed invalid tip credit deductions, failed to pay wages for off-the-clock work, and unlawfully deducted the wages of Plaintiffs and FLSA Collective Members. Further, Defendants unlawfully kept and/or allowed managers/supervisors to keep a portion of tips that Plaintiffs and FLSA Collective Members earned from customers. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

78.     All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

79.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

80.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## **NEW YORK CLASS ACTION ALLEGATIONS**

81.     Plaintiffs bring the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former non-exempt tipped employees employed at the Pickle Hospitality Restaurants owned, operated, and/or

controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

82.     Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

83.     The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

84.     The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

85.     Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

86.     Plaintiffs and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay minimum wage, (ii) failing to pay wages for off-the-clock work,

(iii) unlawfully keeping or allowing managerial or supervisory employees to keep a portion of tips, (iv) unlawfully deducting wages, (v) failing to provide proper wage notices, and (vi) failing to provide proper wage statements, in violation of the NYLL.

87.    Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

88.    Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

89.    Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members, and have no interests antagonistic to Class Members.

90.    Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

91.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

92.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

93.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

94.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

95.    Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

      a.  Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

      b.  Whether Defendants paid Plaintiffs and Class Members at the lawful minimum wage rate;

c.  Whether Defendants took the proper amount of tip credit allowance from Plaintiffs and Class Members under the NYLL;

d.  Whether Defendants provided proper notice to Plaintiffs and Class Members that Defendants were taking a tip credit;

e.  Whether Defendants provided proper wage statements informing Plaintiffs and Class Members of the amount of tip credit taken for each pay period and other information required to be provided on wage statements;

f.  Whether Defendants kept weekly records of the amount of tip credit allowance claimed from Plaintiffs and Class Members;

g.  Whether Defendants required Plaintiffs and Class Members to perform non-tipped side work for more than two (2) hours or twenty percent (20%) of their workday;

h.  Whether Defendants kept accurate records of the amounts of tips earned by Plaintiffs and Class Members;

i.  Whether Defendants subjected Plaintiffs and Class Members to an invalid tip pooling arrangement;

j.  Whether Defendants failed to pay Plaintiffs and Class Members for off-the-clock work;

k.  Whether Defendants misappropriated tips from Plaintiffs and Class Members by keeping or distributing a portion of the tips to employees who are not entitled to receive tips under the NYLL;

l.  Whether Defendants unlawfully deducted the wages of Plaintiffs and Class Members by requiring them to pay Defendants for cash register shortages or property loss;

m.  Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage notices, at hire and before a pay change, as required by the NYLL; and

n.  Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## **STATEMENT OF FACTS**

96.  Plaintiff Roberto Maldonado was employed by Defendants as a bartender at Jacob's Pickles restaurant from in or around June 2019 through July 17, 2020.

97.     Throughout his employment with Defendants, Plaintiff Roberto Maldonado regularly worked three (3) to four (4) days per week, seven (7) to eight (8) hours per day, for a total of approximately twenty-four (24) to thirty-two (32) hours per week. Occasionally, Plaintiff Roberto Maldonado worked more than forty (40) hours per week.

98.     Throughout his employment with Defendants, Plaintiff Roberto Maldonado was paid $10.00 per hour.

99.     Plaintiff Alexander Unger was employed by Defendants as a bartender at Jacob's Pickles restaurant from in or around July 2019 through March 16, 2020.

100.     Throughout his employment with Defendants, Plaintiff Alexander Unger regularly worked three (3) to four (4) days per week, six (6) to eight (8) hours per day, for a total of approximately twenty-one (21) to thirty-two (32) hours per week. Occasionally, Plaintiff Alexander Unger worked more than forty (40) hours per week.

101.     Throughout his employment with Defendants, Plaintiff Alexander Unger was paid $10.00 per hour.

102.     Plaintiff Saul Martinez was employed by Defendants at Jacob's Pickles restaurant (i) as a barback from in or around 2015 until in or around March 2018 and (ii) as a bartender from in or around April 2018 until in or around February 2020.

103.     Throughout his employment with Defendants, Plaintiff Saul Martinez regularly worked six (6) days per week, eight (8) to eleven (11) hours per day, for a total of approximately fifty (50) to fifty-five (55) hours per week.

104.     Throughout his employment with Defendants, Plaintiff Saul Martinez was paid $10.00 per hour.

105.    During the period Plaintiff Saul Martinez worked as a barback from the beginning of his employment in 2015 until in or around March 2018, he was not paid any tips.

106.    Plaintiff Sergio Aldana Diaz was employed by Defendants as a busser from on or around October 4, 2012 until on or around July 9, 2019. While Plaintiff's main job site was Jacob's Pickles, he was regularly sent to cover shifts at Maison Pickle throughout his employment with Defendants. In addition, when Jacob's Pickles was closed for repair after a fire in 2017, Plaintiff worked his full work schedule at Maison Pickle for approximately seven (7) or eight (8) months.

107.    Throughout his employment with Defendants, Plaintiff Sergio Aldana Diaz regularly worked five (5) days per week, eight (8) to nine (9) hours per day, for a total of approximately thirty-eight (38) to forty-five (45) hours per week.

108.    Plaintiff Sergio Aldana Diaz was paid (i) $5.00 per hour from in or around December 2014 until December 2015, (ii) $7.50 per hour from January 2016 until December 2017, (iii) $8.65 per hour from January 2018 until December 2018, and (iv) $10 per hour from January 2019 until the end of his employment with Defendants.

109.    During their employment with Defendants, Plaintiffs regularly observed employees from Maison Pickle, Tiki Chick and Lucky Pickle Dumpling Co. coming to Jacob's Pickles on a temporary or permanent basis. Similarly, Plaintiff regularly observed employees from Jacob's Pickles being sent to work at Maison Pickle, Tiki Chick and Lucky Pickle Dumpling Co. on a temporary or permanent basis.

110.    Based on Plaintiffs' observations and conversations with co-workers, Defendants applied the same pay policies and practices at the Pickle Hospitality Restaurants.

111.    Based on Plaintiffs' observations and conversations with their co-workers at the Pickle Hospitality Restaurants, FLSA Collective Members and Class Members worked hours similar to Plaintiffs' work hours.

112.    Based on Plaintiffs' observations and conversations with their co-workers at the Pickle Hospitality Restaurants, Defendants claimed a tip credit and paid Plaintiffs, FLSA Collective Members and Class Members at the same or similar hourly rates that were at all times less than New York's minimum wage.

113.    Throughout Plaintiffs' employment with Defendants, Plaintiffs and their tipped co-workers regularly observed discrepancies and irregularities in Defendants' tip records and the tip amounts distributed to tipped workers. For example, Plaintiffs regularly observed and spoke to other tipped workers complaining that the combined tips that Plaintiffs and other tipped employees received from Defendants were less than the amount they collectively earned from the customers. In addition, Plaintiffs recall instances when a portion of the collected tips went missing and the tip amounts listed on the wage statements were incorrect and different from the actual amounts of tips Plaintiffs received from Defendants. Each time Plaintiffs requested to see Defendants' tip records and clarification on how Defendants calculated the tip amounts distributed to tipped employees, Defendants refused to produce Plaintiffs with such records or information.

114.    Throughout Plaintiffs' employment with Defendants, Defendants had a policy of allowing managers or supervisors (e.g., "shift leaders") to participate in the tip pools at the Pickle Hospitality Restaurants. The primary duties of managers/supervisors were overseeing and directing the activities of the staff; monitoring inventory for food and supplies; checking food quality, service, and sanitation; making sure that the shift was running smoothly; and preparing records and other paperwork, rather than providing direct service to the customers. Nonetheless,

Defendants distributed a portion of the tips, which Plaintiffs and the tipped employees earned from serving customers, to the managers/supervisors.

115.    As a result of Defendants' invalid tip policies and practices, Plaintiffs and other tipped employees at the Pickle Hospitality Restaurants were not paid the full and proper tip amounts every week.

116.    Throughout Plaintiffs' employment with Defendants, Plaintiffs were regularly required to perform work for about fifteen (15) minutes per day prior to being able to clock in, and for about fifteen (15) to thirty (30) minutes per day after clocking out. As a result, Plaintiffs were not paid wages for all hours worked. Based on Plaintiffs' observations and conversations with their co-workers at the Pickle Hospitality Restaurants, other tipped workers also regularly performed off-the-clock work for which they were not paid any wages.

117.    Throughout Plaintiffs' employment with Defendants, Defendants required Plaintiffs and other employees at the Pickle Hospitality Restaurants to pay Defendants out of pocket when there were cash register shortages or property loss.

118.    Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay, as required under the NYLL. Specifically, Defendants' wage notices that were provided to Plaintiffs did not state their correct pay rate or tip credit rate.

119.    Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper wage statements from Defendants. Specifically, Defendants' wage statements that were provided to Plaintiffs did not state their correct pay rate or tip credit rate. Further, the amounts of tips listed on the wage statements were different from the amounts Plaintiffs earned each week.

120.    Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members the lawful minimum wage due to an invalid tip credit deduction.

121.    Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Plaintiffs, FLSA Collective Members and Class Members did not receive proper notice that Defendants were claiming a tip credit.

122.    Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Plaintiffs, FLSA Collective Members and Class Members did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

123.    Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Defendants failed to provide proper wage statements informing Plaintiffs, FLSA Collective Members and Class Members of the amount of tip credit taken for each pay period. In addition, the wage statements that Defendants provided to Plaintiffs, FLSA Collective Members and Class Members failed to state the accurate amounts of tips earned by tipped employees.

124.    Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Defendants failed to track daily tips earned by Plaintiffs, FLSA Collective Members and Class Members, and failed to keep accurate records thereof.

125.    Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Plaintiffs, FLSA Collective Members and Class Members were required to engage more than two (2) hours and/or twenty percent (20%) of their workdays performing non-

tipped side work, including pre-shift side work, running side work, and post-shift side work. These duties included, but were not limited to, sweeping and mopping the floor; cleaning the windows; wiping the tables and counters and making sure everything is clean; loading and unloading the beverages; moving and connecting the kegs to the bar; cleaning bottles; polishing the glasses; cleaning the restroom; and other non-tipped activities.

126.     Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Defendants kept and/or allowed managers and supervisors to keep a portion of the tips that Plaintiffs and Class Members earned from customers.

127.     Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members their full wages for off-the-clock work.

128.     Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Defendants unlawfully deducted the wages of Plaintiffs, FLSA Collective Members and Class Members by requiring them to pay Defendants for cash register shortages or property loss.

129.     Based on Plaintiffs' observations and conversations with co-workers at the Pickle Hospitality Restaurants, Defendants failed to provide proper wage notices to Plaintiffs and Class Members. The wage notices that were provided to Plaintiffs and Class Members failed to accurately reflect their regular pay rate and tip credit rate.

130.     Based on Plaintiff's observations and conversations with co-workers at the Pickle Hospitality Restaurants, Defendants failed to provide proper wage statements to Plaintiffs and Class Members. The wage statements that were provided to Plaintiffs and Class Members failed to accurately reflect their regular pay rate and tip credit rate, and failed to state other required

information. In addition, the wage statements that were provided to Plaintiffs and Class Members failed to reflect the accurate amounts of tips they earned each week.

131.    Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

132.    Defendants knowingly and willfully operated their business with a policy of failing to pay the full amount of wages for off-the-clock work to Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

133.    Defendants knowingly and willfully operated their business with a policy of keeping a portion of the tips that Plaintiffs, FLSA Collective Members and Class Members earned from customers and/or distributing a portion of the tips to managers, supervisors or other employees who are not entitled to receive tips under the FLSA and NYLL.

134.    Defendants knowingly and willfully operated their business with a policy of unlawfully deducting the wages of Plaintiffs, FLSA Collective Members and Class Members by requiring them to pay Defendants for cash register shortages or property loss, in violation of the FLSA and NYLL.

135.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

136.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

## **STATEMENT OF CLAIMS**

### **FIRST CAUSE OF ACTION**
### *Unpaid Wages and Tips in Violation of the Fair Labor Standards Act*

137.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

138.    The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and FLSA Collective Members.

139.    Defendants failed to pay Plaintiffs and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

140.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants failed to inform Plaintiffs and tipped FLSA Collective Members of the provisions of subsection 203(m) of the FLSA.

141.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants kept and/or distributed a portion of the tips earned by Plaintiffs and tipped FLSA Collective Members to those who do not customarily and regularly receive tips.

142.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants required Plaintiffs and tipped FLSA Collective Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

143.    Defendants unlawfully kept and/or allowed managerial or supervisory employees to keep a portion of tips that Plaintiffs and tipped FLSA Collective Members earned from customers. 29 C.F.R. § 531.52.

144.    Defendants failed to pay wages to Plaintiffs and FLSA Collective Members for off-the-clock work, in violation of the FLSA.

145.    Defendants unlawfully deducted the wages of Plaintiffs and FLSA Collective Members by requiring them to pay Defendants for cash register shortages or property loss, in violation of the FLSA.

146.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Members of their rights under the FLSA.

147.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Members the lawful minimum wage for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and FLSA Collective Members.

148.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

149.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and FLSA Collective Members have suffered damages by being denied minimum wage and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

150.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Members and the actual compensation paid to Plaintiffs and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## SECOND CAUSE OF ACTION
### *Unpaid Wages and Tips in Violation of the New York Labor Law*

151.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

152.     At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

153.     Defendants failed to pay Plaintiffs and Class Members the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

154.     Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiffs and the Class the full minimum wage at a rate of (a) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (b) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (c) $9.00 per hour for all hours worked from December 31, 2015 through December 30, 2016; (d) $11.00 per hour for all hours worked from December 31, 2016 through December 30, 2017; (e) $13.00 per hour for all hours worked from December 31, 2017 through December 30, 2018; and (f) $15.00 per hour for all hours worked from December 31, 2018 through the present.

155.    Defendants have failed to notify Plaintiffs and Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

156.    Defendants required Plaintiffs and Class Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

157.    Defendants unlawfully retained and/or allowed managerial or supervisory employees to keep a part of the gratuities received by Plaintiffs and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

158.    Defendants failed to pay wages to Plaintiffs and Class Members for off-the-clock work, in violation of the NYLL.

159.    Defendants unlawfully deducted the wages of Plaintiffs and Class Members by requiring them to pay Defendants for cash register shortages or property loss, in violation of the NYLL.

160.    Defendants failed to furnish Plaintiffs and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

161.    Defendants failed to furnish Plaintiffs and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of

work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

162.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiffs and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

163.    Defendants failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

164.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid wages for off-the-clock work, misappropriated tips, unlawfully deducted wages, liquidated damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Members and the Class, respectfully request that this Court grant the following relief:

a.   Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.   Certification of this case as a class action pursuant to Rule 23;

c.   Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

d.   An award of unpaid minimum wage due under the FLSA and NYLL;

e.   An award of unpaid wages for off-the-clock work, due under the FLSA and NYLL;

f.   An award of unlawfully retained tips due under the FLSA and NYLL;

g.   An award of unlawfully deducted wages due under the FLSA and NYLL;

h.   An award of liquidated damages as a result of Defendants' willful failure to pay wages and misappropriated tips, pursuant to the FLSA or NYLL;

i.   Statutory penalties for Defendants' failure to provide Plaintiffs and Class Members with proper wage notices, as required by the NYLL;

j.   Statutory penalties for Defendants' failure to provide Plaintiffs and Class Members with proper wage statements, as required by the NYLL;

k.   Pre-judgment and post-judgment interest;

l.   Reasonable attorneys' fees and costs of this action;

m.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

n.   An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

o.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:  December 8, 2020                    Respectfully submitted,

                                            **BROWN, KWON & LAM LLP**

                                    By:     */s/ Angela Kwon*

                                            Angela Kwon, Esq. (AK7296)
                                            William Brown, Esq. (WB6828)
                                            521 Fifth Avenue, Suite 1174
                                            New York, NY 10175
                                            Tel.: (718) 971-0326
                                            Fax: (718) 795-1642
                                            akwon@bkllawyers.com
                                            wbrown@bkllawyers.com
                                            *Attorneys for Plaintiffs*